UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JOHN JOSEPH SHULICK #447749,

    Petitioner,

v.

MARY BERGHUIS,

    Respondent.
_____

Case No. 1:07-cv-1286

HONORABLE PAUL L. MALONEY

Magistrate Judge Ellen S. Carmody

# OPINION and ORDER

**Overruling the Petitioner's Objections and Adopting the R&R;
Dismissing the 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus;**

**Entering Final Judgment in Favor of the Respondent;
Declining to Issue a Certificate of Appealability;
Terminating and Closing the Case**

Shulick and his wife Barbara obtained a judgment of divorce in May 2002, and the divorce decree awarded the marital residence in Charlevoix County, Michigan to Barbara on the condition that she purchase his interest therein by paying him $25,000 by August 15, 2002. On August 9, 2002, Barbara's lawyer, Muniak, attended an in-court hearing at which he intended to deliver those proceeds to Shulick, but Shulick refused to accept payment, instead removing his shoes and banging them together, shouting that the court did not have authority over him, and threatening that any attempt to get him to vacate the house would "result in . . . blood on the walls" and "stacked bodies." The judge directed Shulick to leave the courtroom or be held in contempt, and Shulick left. On

another day not long thereafter, however, Shulick had a separate confrontation at the courthouse which caused him to be jailed and placed in a mental institution at the request of law-enforcement authorities, including the undersheriff involved in the instant case.

Shulick refused several requests to leave the house voluntarily. On September 13, 2002, attorney Muniak obtained a court order authorizing the county sheriff's department to enter the house and physically remove Shulick, and shortly before dawn on September 23, 2002 the sheriff, the undersheriff, and two other county police officers went to the house in marked police vehicles. As they approached the house, both Lasater and Deputy Van Meter saw a man going through the house, turning off lights behind him. Deputy Van Meter secured one entrance to the house in case Shulick tried to avoid being served (with the order to vacate the premises), while Deputy Sheriff Lasater and Undersheriff Schneider went to the door and encountered Barbara, who said that Shulick was upstairs. Contrary to Shulick's version of events, the government alleges that neither the sheriff nor the undersheriff had a weapon drawn.

As Deputy Sheriff Lasater began walking up the stairs, carrying a flashlight, Shulick pointed a shotgun 18-24 inches from Lasater's face and said "drop it or I'll blow your head off"; the sheriff first stayed still for fear that Shulick would shoot him, saying "I'm just here to serve you some papers", but Shulick quickly rammed the barrel of the shotgun into the sheriff's face. The sheriff fell backwards down the steps, was knocked unconscious for a few seconds, lost his upper and lower front teeth, and had his upper lip "dangling by a . . . piece of skin." Emergency room ("ER") physician Newcomb opined, without contradiction, that the sheriff's injuries were consistent with being struck in the face with the barrel of a shotgun, not with simply falling down the stairs and hitting his face on the wall, steps, or floor. The sheriff had to undergo surgery to reattach his upper

2

lip and fix his broken jaw, as well as extensive reconstructive dental surgery. Michigan State Police forensic scientist Patchin found no blood or saliva on Shulick's shotgun, but opined that that was not inconsistent with Shulick having "thrust" the gun into Lasater's face because the gun barrel was a "smooth, non-porous surface." On September 24, 2002, the day after the attack, a neighbor named Carrow recalled, Shulick was present on Carrow's boat along with a shotgun and shells, told Carrow that he had "hit somebody" the day before but "didn't know who it was", and asked if he could stay in the boat. Carrow refused, persuading Shulick to give him the shotgun and surrender peacefully to the police.

Shulick testified, however, that when the police arrived so early in the morning on September 23, the noise roused him from sleep and startled him, sounding like a break-in, causing him to jump out of bed and grab the shotgun and some shells in case he needed to defend himself. When he stepped out of the bedroom and turned to look down the stairs, Shulick alleged, he saw only a bright light shining in his face and shouted "hold it right there" because he could not ascertain who was coming up the stairs. Shulick states that he did not strike the man ascending the stairs until the man had ignored two demands to "drop the light!" Shulick emphasizes the poor lighting in that stairway and maintains that he did not know who the man was, and further alleges that the man had a gun drawn.

**At trial in February 2003**, Shulick insisted that he had done nothing wrong and was merely the victim of his "vengeful, lying" ex-wife and an "overzealous, biased" sheriff's department, though he did allow that he "fe[lt] bad that the sheriff fell down the steps." Both neighbor Carrow and another man testified favorably to Shulick's character, calling him an honest and peaceful man. The jury, however, rejected Shulick's self-defense claim and found him guilty of all three charged

3

offenses under Michigan law, and he was sentenced to consecutive terms of 5-10 years for assault with intent to inflict bodily harm less than murder (MICH. COMP. LAWS § 750.84), 2-4 years for assaulting a police officer causing injury (MICH. COMP. LAWS § 750.81d(2)), and two years for possessing a firearm during the commission of a felony (MICH. COMP. LAWS § 750.227b), which were in excess of the applicable Michigan sentencing guidelines' recommended sentences.

**On direct appeal, Shulick asserted three assignments of error:** (1) the judge, who was personally biased against Shulick even before the trial, abused his discretion and denied Shulick's right to a fair trial by refusing to disqualify himself; (2) the prosecutor's closing argument improperly shifted the burden of proof to Shulick by arguing that the defendant had to fulfill "promises" which defense counsel had made in his opening statement, which implied that Shulick was obligated to answer or disprove inculpatory evidence; and (3) running the terms of imprisonment consecutively was an abuse of discretion given that Shulick had no prior convictions, even for a misdemeanor, as a juvenile or an adult. **The Michigan Court of Appeals affirmed Shulick's convictions, stating in pertinent part as follows:**

> The trial lasted five days, excluding jury deliberations. The prosecutor's closing argument focused largely on things Shulick's counsel had said in his opening statement that the evidence would show, which the prosecutor said that it did not. The jury deliberated less than two hours before finding Shulick guilty as charged on all three counts. The trial court sentenced Shulick in excess of the guidelines.
>
> III.  Disqualification
>   A.  Standard of Review
>
> Shulick argues that he did not receive a fair trial because the trial judge did not disqualify himself due to prejudice or bias in accordance with MCR 2.003. We review a trial court's factual findings with respect to a motion for disqualification for clear error, and review the application of the law to the facts *de novo*.
>
>   B.  MCR 2.003(B)(1)

MCR 2.003(B)(1) calls for disqualification of a judge when, *inter alia*, "[t]he judge is personally biased or prejudiced . . . against a party." To require recusal of a judge due to alleged personal bias or prejudice, (1) there must be *actual* bias that is *personal* in nature on the part of the judge, and (2) the bias must be extrajudicial in origin, i.e., derived from matters outside what the judge has learned in the case. Rulings of a judge almost never create the basis for a finding of bias. Moreover, the judge's opinions derived from an earlier case involving the party require disqualification only if they 'display a deep-seated favoritism or antagonism that would make fair judgment impossible." "The party who challenges a judge on the basis of bias or prejudice must overcome a heavy presumption of impartiality."

C. Overcoming the Presumption

In our view, Shulick has not overcome this strong presumption. He has presented only evidence that *he* had a bias against the trial *judge*, not that the *judge* was biased against him. The case is, therefore, governed by *Crampton v. Dep't of State*. *Crampton* provides for disqualification of a judge if the judge has either (1) "been the target of personal abuse or criticism from the party before him" that, although it need not have arisen from circumstances where the judge initiated the conflict, have gotten the judge "embroiled in a running, bitter controversy," or (2) "become enmeshed in (other) matters " involving the party seeking disqualification, so that "experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable."

We conclude that Shulick has not met this standard for disqualification, for two reasons. First, the record indicates that the judge never became "embroiled" or "enmeshed" in a controversy with Shulick. Rather, the judge was the object of a diatribe by Shulick, to which the judge never responded inappropriately, and thus never became enmeshed in a controversy of any kind. Rather, his conduct toward Shulick was, at all times, marked by scrupulous fairness. Second, the evidence of Shulick's guilt, and the general indicia of fairness in his trial, were so strong that he cannot establish the "miscarriage of justice" required for reversal.

IV. Prosecutorial Misconduct
   A. Standard of Review

Shulick claims that the prosecutor engaged in misconduct requiring a new trial. We review allegations of prosecutorial misconduct on a case-by-case basis to determine, from an examination of the challenged comments in context, whether the defendant was denied a fair and impartial trial. Here, because the claim of error was not preserved, reversal is appropriate only upon a showing of plain error affecting substantial rights, such that either "the defendant is actually innocent or the error affected the fairness, integrity, or public reputation of judicial proceedings."

5

B. The Prosecutor's Comments

We find that the prosecutor did not comment on the Shulick's [sic] failure to present evidence in any way that contradicted the court's instructions that the burden of proof rested entirely on the prosecution and that Shulick was not required to present any evidence at all. Rather, the prosecutor simply compared what Shulick claimed the evidence would show, and what the evidence actually showed. To do so is entirely proper. We conclude that there was no prosecutorial misconduct.

V. Sentencing
   A. Standard of Review

Shulick argues that the trial court's upward departure from the sentencing guidelines mandates resentencing. When reviewing departures from the statutory sentencing guidelines, we review whether a factor exists for clear error, whether a factor is objective and verifiable *de novo*, and whether a reason is substantial and compelling for an abuse of discretion. An abuse of discretion has a unique meaning in the sentencing context. The *Babcock* Court stated that "the appropriate standard of review must be one that is more deferential than *de novo*, but less deferential than the *Spalding* abuse of discretion standard. A reviewing court must also determine "whether taking into account an allegedly substantial and compelling reason would contribute to a more proportionate criminal sentence than is available within the guidelines range.

   B. The Trial Court's Articulation of Its Reasons

We find that the trial court clearly articulated two substantial and compelling reasons for the departure, either of which would, in itself, justify the sentencing departure . The trial court correctly found that the extent of the injuries to the sheriff, which were not considered by the guidelines, justified an upward departure. Although injury was, as Shulick says, scored by the guidelines, the extent of the injuries suffered was not. For example, a sprained or broken arm would have resulted in scoring points. The sheriff sustained permanent grievous injuries that affect the quality of his life. The severity and extent of the sheriff's injuries were not taken into account by the guidelines and justified the upward departure.

The trial court also correctly found that there was objective evidence for Shulick's failure to accept responsibility for his own actions, as demonstrated by his actions and his words in repeatedly blaming his conduct on anyone but himself – on the judge, the sheriff, his ex-wife, the judicial system itself – and his willingness to act contemptuously, and indeed violently, toward public servants carrying out the law, whenever the legal system did not produce the results he wanted. Consideration of these factors made for a more proportionate sentence than would have been possible had they not been considered and so we conclude that there was no clear error in the

upward departure.

Affirmed.

*People v. Shulick*, No. 247722, 2004 WL 2050156, *4-6 (Mich. App. Sept. 14, 2004) (per curiam) (C.J. Whitbeck, Sawyer, Saad) (footnotes 4-22 omitted). Without opinion, the Michigan Supreme Court denied Shulick's application for leave to appeal, *see People v. Shulick*, No. 127363, 472 Mich. 916, 697 N.W.2d 154 (Mich. 2005).

**Subsequently, Shulick timely filed a motion for relief from judgment in state court, asserting the following claims**: (1) new trial due to newly discovered evidence because prosecution witness recanted perjured testimony which was obtained by prosecutorial coercion and threats, (2) appellate counsel rendered ineffective assistance by failing to produce an expert witness for service of process, (3) trial court abused its discretion in refusing to let Shulick's character witnesses testify regarding the sheriff's truthfulness "as to the credibility of the crimes charged", (4) trial counsel rendered ineffective assistance by failing to provide pertinent portions of Shulick's "inflammatory" letters dated February 16 and May 14, 2002 in support of the disqualification motion. The state trial court denied the motion for relief from judgment, and the state appellate courts denied leave to appeal. *See People v. Shulick*, No. 02-730-09-FH, slip op. (Charlevoix Cty. Cir. Ct. Oct. 27, 2006) (not on WestLaw or Lexis), *leave to app. denied*, No. 275793, slip op. (Mich. App. June 18, 2007) (not on WestLaw or Lexis), No. 134555, 480 Mich. 953, 741 N.W.2d 310 (Mich. Nov. 29, 2007).

In December 2007, Shulick timely filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, asserting the following claims:

    I.     Judge bias

    II.    Factual actual innocence: recanted perjured testimony of government witness, and newly discovered evidence

|  |  |  |
|---|---|---|
| III. | Ineffective assistance of trial counsel and appellate counsel | |
| IV. | Sixth Amendment's Confrontation Clause | |
| V. | Ineffective assistance of trial counsel | |
| VI. | Constitutional challenge to a state statute | |
| VII. | Confrontation Clause again | |
| VIII. | Ineffective assistance of trial counsel and appellate counsel again | |
| IX. | Sixth Amendment right to cross-examine and impeach witnesses | |
| X. | Deprivation of federal constitutionally-recognized liberty interest and due process due to ineffective assistance of trial counsel | |

**Pursuant to 28 U.S.C. § 636 and W.D. MICH. LCIVR 72.2(b), this matter was automatically referred to the Honorable Ellen S. Carmody**, United States Magistrate Judge, who issued a Report and Recommendation ("R&R") on June 23, 2010. The R&R was sent by regular paper mail to petitioner John Joseph Shulick, who filed timely objections, with an extension of time, on August 9, 2010. Respondent Berghuis filed a response to the objections on September 15, 2010 (document #46) as directed by the court, and Shulick filed a reply on September 29, 2010 (document #47).

**The court finds the R&R to be well-reasoned and is unconvinced by the plaintiff's objection.** For the reasons explained by the R&R at 21-23, Shulick's first claim, judicial bias, provides no ground for federal habeas relief, because the Michigan courts did not act contrary to clearly established federal law or unreasonably apply such law in rejecting the judicial-bias claim as meritless. Shulick acknowledges precedent holding that in all but the rarest circumstances, recusal will involve bias from extra-judicial sources, but he contends that this case presents such rare and unusual circumstances. *See* Shulick Objections at 18-19. But Shulick does not demonstrate that

8

the state trial court was "embroiled in a longstanding bitter running controversy" which gave rise to the degree of favoritism and antagonism which is required where no extra-judicial source is involved, merely repeating his speculation that the judge was biased against him because of a prior case where a Charlevoix County sheriff's deputy's son was accused of committing criminal sexual conduct (which Shulick refers to as "rape") and giving illegal drugs to Shulick's daughter. *See* Shulick's Objections at 20-26 (also alleging that prosecutor's successor, who was not biased against him, took a different view of the case against the police officer's son in the matter and at least initially was not willing to plea-bargain with the son). Shulick then merely repeats or expands upon arguments that he made before the Magistrate Judge or attempts to make new arguments which he could and should have made before the Magistrate Judge. *See* Shulick's Objections at 19 (asserting that he was convicted because the judge's bias led him to place extreme restrictions on his defense). Shulick also refers to alleged prosecutorial bias against him in Charlevoix County, but he fails to show that such bias, even if established, has any bearing on the alleged bias of the *judge*. *See* Shulick's Objections at 19-20. Shulick also states that the judge was listed as a witness in Shulick's "daughter's up-and-coming probate hearing", *id.* at 20, but fails to explain how this rendered the judge's non-recusal contrary to clearly established federal law.

Next in support of his judicial-bias claim, Shulick alleges that when state judge Pajtas spoke at the November 1, 2002 recusal hearing, he acknowledged that he had presided over cases involving Shulick and his ex-wife (the divorce proceedings and a personal-protection order proceeding) as well as a criminal trial involving Shulick's son but intentionally and dishonestly omitted mention of his presiding over the trial where a state trooper's son was charged with a sexual offense against Shulick's daughter. *See* Shulick's Objections at 27. Shulick also makes much of the fact that "extra

9

security" was present in the courtroom during his divorce proceedings at the request of the judge, which he takes as evidence that the judge was biased against him. *See* Shulick's Objections at 27-28. In light of Shulick's undisputed disruptions and threats at prior proceedings, however, there is no reason to believe that the judge evinced bias in requesting appropriate security, and Shulick presents no Supreme Court or Sixth Circuit precedent to the contrary.

In further purported support of his judicial-bias claim, Shulick complains about the trial judge's allegedly misunderstanding or misconstruing a police officer's answer to a question during the trial, the judge making a seemingly innocuous comment that he did not recall some unspecified statement (perhaps by "Undersheriff Schneider"). *See* Shulick's Objections at 29-30. Shulick fails to show how the judge acted contrary to clearly established federal law in refusing to recuse himself in light of these purportedly bias-evincing statements. Next, Shulick contends that the judge allowed Undersheriff Schneider to "evade giving a direct response to defense counsel's previously allowed inquiry as to why the Undersheriff appeared before T.V. cameras broadcasting that" the police expected a confrontation due to Shulick's past "history" with their office, *see* Shulick's Objections at 30, but he fails to explain how the judge wrongly allowed the officer to avoid the question or how such action evinced bias warranting recusal under United States Supreme Court precedent. Shulick next alleges that the judge's bias manifested itself in the judge's comment to defense counsel that "we need to move along" while defense counsel had the floor. Shulick acknowledges that the transcript shows this comment as being made by defense counsel Harris, but contends that that is obviously a mistake by the court reporter who prepared the transcript. *See* Shulick's Objections at 30-31. But Shulick presents no authority for a federal habeas court to rewrite the transcript of a state-court criminal trial based on the unsubstantiated allegation of a party to that trial, especially

10

given that Shulick does not allege that he or his counsel objected to the transcript at any time before now. The remainder of Shulick's objections on the judicial-bias claim provide more of the same, arguing that the state courts unreasonably applied the Supreme Court's *Liteky v. US* (510 U.S. at 555) and *Bracy v. Gramley* (520 U.S. 899) decisions regarding judicial bias, and they do nothing to undermine the Magistrate Judge's conclusion that the state courts did not commit error which a federal habeas court may reverse under AEDPA's deferential standard of review. *See* Shulick's Objections at 31-34 and 41-44.

**Also for the reasons explained by the R&R at 23-26, another seven of Shulick's ten habeas claims (numbers 3-5 and 7-10) are procedurally defaulted.** Shulick acknowledges that he failed to raise these claims as assignments of error on direct appeal, and he merely reiterates his argument that his appellate counsel rendered constitutionally ineffective assistance of counsel by failing to do so, purporting to incorporate various briefs rather than actually explaining why Supreme Court precedent should have compelled the Michigan Court of Appeals to conclude that failing to raise those claims was deficient performance which prejudiced him. *See* Shulick's Objections at 34-35. On the contrary, Shulick fails to undermine the Magistrate Judge's conclusion that because the claims not raised on direct appeal lacked merit, appellate counsel's "failure" to raise them could not have prejudiced Shulick within the meaning of the *Strickland* ineffective-assistance standard. *See* Shulick's Objections at 36-37 (defense counsel's decision not to call a particular expert witness); *id.* at 38-41 (defense counsel's opening statement regarding the importance of evidence on the police officers' compliance, or non-compliance, with procedures for identifying themselves as police officers when entering Shulick's home); *id.* at 44-54 (claims four and nine regarding impeachment of Sheriff Lasater's character for truthfulness under MICH. R. EVID. 608, the

11

prosecutor's alleged improper bolstering and vouching for Lasater, and the Sixth Amendment's Confrontation Clause); and *id.* at 54-62 (habeas claim seven regarding rejection of Barbara Shulick's alleged recantation and the Michigan appellate courts' failure to review the relevant affidavit).

**Finally, for the reasons explained by the R&R at 34-35, Shulick's two remaining habeas claims (numbers two and six) are unexhausted and can no longer be exhausted.** Shulick merely repeats his earlier argument, not credited by the Magistrate Judge, that he effectively raised both these claims as issue one in his MICH. CT. R. 6.500 motion for post-conviction relief.

Accordingly, this court need not and does not consider the merits of the habeas claims which are procedurally defaulted (claims 3-5 and 7-10) or unexhausted (claims 2 and 6), *see* R&R at 26-34 and 35-37.

## CERTIFICATE OF APPEALABILITY

The U.S. Supreme Court disapproves of blanket denials of certificates of appealability ("COAs"). *Colwell v. McKee*, 2009 WL 125223, *3 (W.D. Mich. Jan. 16, 2009) (Maloney, C.J.) (citing *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001))). Rather, this court "must 'engage in a reasoned assessment of each claim' to determine whether a [COA] is warranted." *Oatis v. Caruso*, 2009 WL 80347, *4 (W.D. Mich. Jan. 8, 2009) (Maloney, C.J.) (citing *Murphy*, 263 F.3d at 467)..

Under 28 U.S.C. § 2253(c)(2), "'the court should grant a COA for an issue raised in a § 2254 petition only if the petitioner has made a substantial showing of the denial of a federal constitutional right.'" *Wardlaw v. Howes*, 575 F. Supp.2d 820, 821 (W.D. Mich. 2008) (Paul L. Maloney, C.J.) (quoting *Harbison v. Bell*, 503 F.3d 566, 568 (6th Cir. 2007), *cert. denied*, – U.S. –, 128 S.Ct. 1479 (2008), *cert. granted o.g.*, – U.S. –, 128 S.Ct. 2959 (2008)). To satisfy this standard, "the petitioner

12

must demonstrate that reasonable jurists could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues raised are 'adequate to deserve further review.'" *Wardlaw*, 575 F. Supp.2d at 821(quoting *Harbison*, 503 F.3d at 569 (citing *Banks v. Dretke*, 540 U.S. 668, 705 (2004)). *See also Butz v. Berghuis*, 2009 WL 33462, *6 (W.D. Mich. Jan. 5, 2009) (Maloney, C.J.) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)) and *Henley v. Bell*, – F. App'x –, –, 2009 WL 233283, *1 (6th Cir. Feb. 2, 2009) (p.c.) (Siler, Cole, Cook) (citing *Banks*, 540 U.S. at 674), *cert. denied*, – U.S. –, 129 S.Ct. 1057 (2009).

The petitioner need not show, however, that he is likely to succeed on appeal. *See Wardlaw*, 575 F. Supp.2d at 821 (citing *Miller-El*, 537 U.S. at 337); *Workman v. Bell*, 484 F.3d 837, 842 n.3 (6th Cir. 2007) (distinguishing standard for stay pending appeal, which focuses on appellant's likelihood of success on the merits, from the COA standard, which requires a lesser showing), *reh'g & reh'g en banc denied* (6th Cir. May 7, 2007). "'[I]t is consistent with § 2253 that a certificate of appealability will issue in some instances where there is no certainty of ultimate relief.'" *Wardlaw*, 575 F. Supp.2d at 821 (quoting *Walker v. Carlton*, 114 F. App'x 687, 690 (6th Cir. 2004) (quoting *Miller-El*, 537 U.S. at 337)).

Petitioner Shulick does not meet the standard for a COA, because other reasonable jurists would not disagree with the determination that his claims are all either procedurally defaulted, unexhausted and unexhaustable, or meritless. Nor has he presented any other issues which are "adequate to deserve further review."

## ORDER

Accordingly, the petitioner's objections [document #42] are **OVERRULED**.

The R&R [document # 38] is **ADOPTED**.

The habeas corpus petition is **DENIED**.

This case is **TERMINATED** and **CLOSED**.

This is a final order**, but the court declines to issue a certificate of appealability**.[1]

**IT IS SO ORDERED this 22nd day of October 2010.**

                                                      /s/ Paul L. Maloney
                                                     Honorable Paul L. Maloney
                                                     Chief United States District Judge

---

[1] On its own, this court's refusal to issue a COA does not prevent the losing party from seeking a COA from the U.S. Court of Appeals under FED. R. APP. P. 22. *Wilson v. US*, 287 F. App'x 490, 494 (6th Cir. 2008) ("If the district judge denies a COA, a request may then be made to a court of appeals . . . .") (citing *Kincade v. Sparkman*, 117 F.3d 949, 953 (6th Cir. 1997)).